In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1212

ACUTE CARE SPECIALISTS II, et al.,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:11-cv-00465 — **Matthew F. Kennelly**, *Judge.*

ARGUED SEPTEMBER 7, 2012 — DECIDED AUGUST 22, 2013

Before CUDAHY, ROVNER, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Almost thirty years ago, the appellant-taxpayers entered into partnerships which the IRS later determined engaged in little more than tax avoidance. The path by which this matter reached our court was convoluted, but our decision is straightforward. We affirm the district court's holdings that it lacked subject-matter jurisdiction over the taxpayers' claims that the IRS's assessments

against them were untimely and improperly included penalty interest and that taxpayers Joann and Joseph Shanahan's refund claim was barred by the statute of limitations. Furthermore, the district court was not obligated to conduct a full *res judicata* analysis before dismissing the taxpayers' claims.

**I.**

During the 1970s and 1980s, American Agri-Corp organized a number of limited partnerships, for which the company served as general partner. American Agri-Corp solicited high-income individuals to serve as limited partners, investing in the partnerships. These supposed agricultural ventures took the term "cash crop" literally; the purported purpose of these partnerships was to invest in agricultural activities—but, according to the IRS, the real purpose was to shelter the limited partners' income from taxation.

Plaintiff-appellants Acute Care Specialists II (an entity composed of physicians in the greater Chicago area), Gregory Jackson, Alan Kaplan, Anthony Raccuglia, and Joseph Shanahan were each limited partners in at least one of several partnerships that were audited by the IRS during the mid-1980s. (The other plaintiffs in this case, the wives of these individuals, were not limited partners, but are included in this case because they filed joint tax returns with their husbands. We adopt the term "the taxpayers" to refer to all of the plaintiff-appellants in this appeal, unless otherwise noted.)

Several years later, the IRS concluded that the partnerships were, essentially, tax-avoidance schemes. In 1990 and 1991, the IRS issued Final Partnership Administrative Adjusts for the relevant partnerships. These Adjusts stated that the partner-

ships' activities constituted "a series of sham transactions" and "lack[ed] economic substance," and disallowed several listed farming expenses and other deductions for the 1984 or 1985 tax years.

But as it turned out, the issuance of these Adjusts was just one step in the IRS's long journey to collect the taxes (along with interest and penalty interest) that it determined these partners owed. Soon after the issuance of these Adjusts, various partners filed petitions in the Tax Court to challenge the IRS's determinations. Specifically, they sought readjustments of the assessed partnership items pursuant to 26 U.S.C. §6226.

The Tax Court consolidated a suit filed by one of the partnerships involved in this appeal with six other Tax Court cases, and consolidated the suits filed by other partnerships involved in this appeal with seventy-six other cases. Fred Behrens, an American Agri-Corp officer and general partner for all of the partnerships, intervened as the tax-matters partner for all of the partnerships involved in this case, as well as for many others. These suits all raised a similar set of issues, and all of the partnerships involved in this case agreed to be bound by the Tax Court's determination of these issues in one particular case, known as the Test Case Group.

During the trial, some of the partnerships in the Test Case Group raised as an affirmative defense the argument that the limitations period under 26 U.S.C. §6229(a) had expired before the IRS issued its Final Partnership Administrative Adjusts.

For one of these Final Partnership Administrative Adjusts, the Tax Court held that the IRS action was not time-barred

"because the partnership return … was not a valid return and, accordingly, did not trigger the statute of limitations." *Agri-Cal Venture Assoc. v. Comm'r,* 80 T.C.M. (CCH) 295 (2000). For the other Final Partnership Administrative Adjusts, the Tax Court held that these IRS determinations were not time-barred "because the partnerships had extended the time for the IRS to issue" the Adjusts. *Id.*

Following the conclusion of the Test Case Group trial, Behrens, acting as tax-matters partner, reached a contingent agreement with the IRS regarding all of the disputed partnership items. The contingent agreement stated that "all partners would be bound by the [Tax Court's] determination of the partnership items" and "expressly consent to the assessment of interest on the deficiencies in income tax, if any, which are attributable to the adjustments to the partnership items." This agreement was contingent on the consent of all partners. The partners' consent would be implied by the absence of an objection to the Tax Court's entry of decisions.

Next, the IRS filed motions for entry of decisions in all of the cases involving partnerships that are relevant to this appeal. These motions stated that, as per the contingent agreements, the IRS would determine the amount of interest to be assessed on any income tax deficiencies "by way of computational adjustment."

In July 2001, the Tax Court entered decisions for all partnerships that are relevant to this appeal. The court determined that the partnerships had engaged in "transactions which lacked economic substance," and which "result[ed] in a substantial distortion of income and expense" in each partner's

tax returns. Accordingly, the court concluded that the IRS was authorized to adjust the partners' income taxes owed. The IRS did so, assessing tax, interest, and penalty interest under 26 U.S.C. §6621(c).

In January 2011, the taxpayers filed suit, alleging that these assessments were improper. The IRS filed a motion to dismiss. The IRS made three arguments in its motion. First, the IRS argued that the district court did not have jurisdiction to hear the taxpayers' claim that the statute of limitations had expired by the time that the IRS issued its Final Partnership Administrative Adjusts. According to the IRS, the taxpayers' statute-of-limitations argument involved a partnership-level determination, and 26 U.S.C. §7422(h) deprives courts of jurisdiction over such determinations. Second, the IRS asserted that the assessment of penalty interest involved a partnership-level determination over which, once again, courts lack jurisdiction. Third, the IRS argued that taxpayers Joseph and Joann Shanahan's claims concerning one of the partnerships in which they were partners in tax year 1986 was time-barred by the six-month statute of limitations established by 26 U.S.C. §6230(c). The district court agreed, granting the IRS's motion to dismiss, and the taxpayers appealed.

## II.

We review a district court's dismissal for lack of subject-matter jurisdiction de novo. *Apex Digital Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). In this review, we accept as true the taxpayers' factual allegations, drawing all reasonable inferences in their favor. *Iddir v. I.N.S.*, 301 F.3d 492, 496 (7th Cir. 2002). In determining whether subject-matter

jurisdiction exists, we consider any evidence that has been submitted regarding jurisdiction, in addition to the allegations in the appellant's complaint. *Id.*

## A.

The taxpayers first claim that the district court erred in construing §7422(h) to bar jurisdiction over their claim that the IRS and the tax-matters partner did not agreed to extend the length of the limitations period, i.e., the period during which the IRS must file an assessment against a taxpayers or forfeit the ability to do so. (For simplicity, we adopt the term "the limitations issue" to refer to this matter.)

The IRS argues that the taxpayers' limitations claim is attributable to partnership items. Since courts are jurisdictionally barred from hearing taxpayer actions brought for a refund attributable to partnership items,[1] the IRS asserts that the district court correctly held that it lacked subject-matter jurisdiction over the taxpayers' refund claim. *See* 26 U.S.C. §7422(h) ("No action may be brought for a refund attributable to partnership items … ."). The taxpayers disagree, asserting

---

[1]  This jurisdictional bar on claims attributable to partnership items has its roots in the federal government's treatment of partnerships for tax purposes. Partnerships do not pay federal income taxes, but still must file informational returns. Individual partners then report their shares of income from the partnership on their personal income tax returns. To avoid the inefficiency of requiring the IRS to audit each partner's tax return when the IRS suspects a problem at the partnership level, Congress created a unified partnership-level procedure for auditing and litigating "partnership items." *See* Tax Equity and Fiscal Responsibility Act (TEFRA) of 1982, 26 U.S.C. §§6221–6234. As part of this statutory scheme, §7422 bars courts from hearing taxpayer claims attributable to partnership items.

that the limitations issue involves an "affected item," not a partnership item, and that therefore 26 U.S.C. §7422(h) presents no jurisdictional bar. Thus, the critical jurisdictional issue in this portion of the taxpayers' appeal is whether the limitations issue is best characterized as a matter attributable to a partnership item or an affected item.

Before making this assessment, some background information concerning the limitations period for IRS assessments is helpful. The IRS generally must make an assessment against a taxpayer within a three-year period following the taxpayer's filing. 26 U.S.C. §6501. Ordinarily, this general three-year window also applies to taxes that are attributable to a partnership item or affected item. *See* 26 U.S.C. §6229(a) (stating that the IRS must make the assessment against a partnership within a three-year window following either the filing of the partnership's tax return or the last day of filing for a taxable year). The IRS and the taxpayer may agree to an extension of the limitations period, however. 26 U.S.C. §6229(b). Specifically, the limitations period for IRS assessments against partnerships may be extended by written agreement between the IRS and the tax-matters partner or any other partner authorized to enter into such an agreement, provided that this written agreement occurs before the expiration of the statute of limitations. *Id.*

In the instant case, the taxpayers and the IRS contest whether there was a valid written agreement between the IRS and the partnerships extending the deadline for specific IRS assessments that, in the absence of such an agreement, would be barred by the statute of limitations. The taxpayers argue that the agreement between the tax-matters partner and the

IRS is not valid, and that, therefore, the IRS's assessments against them is untimely under the three-year window established in §6229(a).

The IRS counters that the very act of determining whether a validly designated partner agreed in writing on behalf of the partnership to extend the limitations period requires making a determination of what the partnership did. In other words, the IRS's position is that determining whether a partnership and the IRS agree to extend the limitations period requires analysis of a partnership item. Since courts are prohibited from considering cases brought for a refund attributable to partnership items, the IRS contends that courts lack subject-matter jurisdiction over the taxpayers' claim. *See* 26 U.S.C. §7422(h).

In response, the taxpayers assert that the determination of whether a validly designated partner agreed to extend the limitations period requires a partner-level assessment. Since the limitations period established in §6501 starts to run when an *individual* partner files his or her tax return, the taxpayers contend that the determination of whether the partnership's tax-matters partner and the IRS entered into an agreement to extend the limitations period involves a partner-level determination. Because §7422(h)'s jurisdictional bar applies only to partnership items, the taxpayers argue that §7422(h) cannot bar their claim that the IRS's assessment against it did not occur during the statutorily required three-year period for such assessments.

Stated plainly, all of this is just a long way of saying that this portion of the taxpayers' appeal turns on whether the limitations issue is attributable to a partnership item or an

affected item—and, hence, whether the subject-matter jurisdictional bar in §7422(h) applies. Given the centrality of this "partnership-item-or-affected-item" determination, we provide definitions of these two categories of items before proceeding to analyze this issue.

Concerning partnership items, the relevant statutory provision, §7422(h), refers to 26 U.S.C. §6231(a)(3) as defining partnership items for the purposes of §7422(h) (with two exceptions, neither of which the parties claim apply here). In turn, §6231(a)(3) defines partnership items as "any item required to be taken into account for the partnership's taxable year … [that] is more appropriately determined at the partnership level than at the partner level." 26 U.S.C. §6231(a)(3). This definition seems circular to us. Treasury regulations, however, shed a bit more light. According to these regulations, partnership items include, *inter alia*, "the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." 26 C.F.R. §301.6231(a)(3)–1(b). Because this regulation is a reasonable construction of the ambiguous §6231(a)(3), it is entitled to *Chevron* deference. *See Prati v. United States*, 603 F.3d 1301, 1306 (Fed. Cir. 2010); *Keener v. United States*, 551 F.3d 1358, 1362 (Fed. Cir. 2009); *see also Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

Section 6231(a) also provides a definition of affected item: "The term 'affected item' means any item to the extent such item is affected by a partnership item." 26 U.S.C. §6231(a)(5). Affected items can be thought of as hybrids of partnership items and partner items, containing partnership-item and

partner-item components. *See Duffie v. United States*, 600 F.3d 362, 366 (5th Cir. 2010). For example, a limited partner's "amount of risk" (a term of art in the Internal Revenue Code) may involve both a partnership-item determination of the size of the partnership's debt and a partner-item determination of the amount of the partnership debt that this limited partner assumes; hence, this determination is an affected item. *See id.*; *McGann v. United States*, 76 Fed. Cl. 745, 750 (2007).

With these definitions in mind, we turn to evaluating the taxpayers' assertion that the limitations issue is an affected item, which would make §7422(h)'s prohibition on suits for refunds attributable to partnership items irrelevant. Unfortunately for the taxpayers, we previously have held that such determinations are decided on the partnership level. In *Kaplan v. United States*, we were confronted with the argument that an agreement between a purported tax-matters partner and the IRS extending the IRS's period for adjusting the partnership's taxes was invalid, because the partner that had entered into this agreement allegedly had lacked the authority to do so. 133 F.3d 469, 473 (7th Cir. 1998). We stated that the validity of the agreement extending the limitations period was a partnership-level determination, despite the fact that an assessment of the agreement's validity arguably might require a court to examine the extent of the authority that the partnership delegated to a particular partner. *Id.* We reasoned that since "the underlying substantive claim concerns the propriety of the adjustments to the partnership's … tax return," if the appellants "were to succeed in their claim, it would affect the tax liability of all of [the partnership's] partners." *Id.* Thus, the appellants' chal-

lenge to the validity of the agreement was a partnership-level determination, over which the courts lacked jurisdiction. *Id.*

The facts of the instant case are only slightly different from *Kaplan*. The taxpayers in *Kaplan* challenged the *validity* of a written agreement between the partnership and the IRS, whereas the taxpayers here challenge the *existence* of such an agreement. But this is a distinction without difference for purposes of this case, since both claims can be characterized as challenging the existence of a valid agreement.

Anticipating the importance of *Kaplan* to the instant matter, the taxpayers call our attention to *Rhone-Poulenc Surfactants & Specialties, L.P. v. Comm'r*, 114 T.C. 533, 542 (2000), a Tax Court case decided after *Kaplan* and favorably cited by two of our sister circuits. *See AD Global Fund v. United States*, 481 F.3d 1351 (Fed. Cir. 2007); *Curr-Spec Partners, L.P. v. Comm'r,* 579 F.3d 391, 396–99 (5th Cir. 2009). *Rhone-Poulenc* provides the Tax Court's interpretation of the interaction between §6501, which provides the maximum-limitations period within which any tax may be assessed, and §6229(a), which provides the minimum-limitations period within which any tax attributable to partnership items or affected items may be assessed. *Rhone-Poulenc*, 114 T.C. at 542. The Tax Court—and our sister courts that have adopted its approach—consider §6229(a) not to create a separate ceiling for a limitations period for assessments of partnership- and affected-items, but rather to create a floor. *See, e.g., AD Global Fund*, 481 F.3d at 1354. Since §6229(a) "contains no mandatory words establishing a time within which assessments must be made," this provision on its own does not establish a separate limitations period. *Id.*

Without passing judgment on the wisdom of those courts' interpretation of §6229(a), we note that the taxpayers take this interpretation a step beyond what those courts stated; we reject the taxpayer's proposed extension of *Rhone-Poulenc*'s reasoning. The taxpayers argue that, because §6229(a) is "merely a possible extension" of §6501(a), we ought to consider §6229(a) as an affirmative defense that the IRS may raise in response to the taxpayers' *prima facie* argument that the IRS's action is time-barred by §6501(a). Essentially, they argue that whereas §6501(a) is jurisdictional, §6229(a) is not.

This is an unusual argument, because the conclusion that §6501(a) is jurisdictional but §6229(a) must be raised by the government as an affirmative defense does not seem to follow logically from the taxpayers' premise, grounded in the Federal Circuit, Fifth Circuit, and Tax Court's caselaw, that §6229(a) is "merely a possible extension" of §6501(a). The taxpayers do not cite any caselaw to support their logical leap. Instead, they claim that their argument is "of first impression here." But that is not quite accurate. Other courts have rejected claims that §6229(a) must be raised by the government. *See, e.g.*, *Prati*, 603 F.3d at 1307 ("[Appellants argue that the] §6229 time extension is not invoked … unless it is separately asserted by the government. We disagree."). More generally, various courts outside of our circuit have rejected the argument "that a refund suit based on limitations under §6501 is different from a refund suit based on limitations under §6229." *Rowland v. United States*, Civil No. 7:07–cv–18–O, 2011 WL 2516170 at *10 (N.D. Tex. June 22, 2011) (collecting cases). We add our voice to this growing choir.

Having rejected the taxpayers' invitation to interpret §6229 and §6501 in the manner they propose, *Kaplan*'s logic remains sound. Because the determination of whether a valid written agreement exists will affect the entire partnership's bottom-line—i.e., because it is a "legal and factual determination[] that underlie[s] the determination" of various balance-sheet items for tax purposes, 26 C.F.R. §301.6231(a)(3)–1(b)—this determination meets the statutory and regulatory definitions of a partnership item. *See* 26 U.S.C. §6231(a)(3); 26 C.F.R. §301.6231(a)(3)–1(b). In making this determination, we note that our practice is consistent with that of several of our sister circuits, which have determined that statute-of-limitations challenges cannot be raised in partner-level proceedings under the Tax Equity and Fiscal Responsibility Act (TEFRA) of 1982, 26 U.S.C. §§6221–6234. *See, e.g., Keener*, 551 F.3d at 1364 ("To remain consistent with [TEFRA's] structure, the limitations claim … should not be litigated in a partner-level proceeding because it affects the partnership as a whole."); *Weiner v. United States*, 389 F.3d 152, 156 (5th Cir. 2004); *Davenport Recycling Assocs. v. Comm'r*, 220 F.3d 1255, 1260 (11th Cir. 2000); *Chimblo v. Comm'r*, 177 F.3d 119, 125 (2d Cir. 1999); *Williams v. United States*, 165 F.3d 30 (6th Cir. 1998) (unpublished table decision).

Because the taxpayers' claims in this part of its appeal are attributable to a partnership item, courts lack subject-matter jurisdiction to hear them under §7422(h). Accordingly, we affirm the district court's dismissal for want of jurisdiction.

**B.**

Second, the taxpayers challenge the district court's determination that §7422(h) provides a jurisdictional bar to their claim

that the IRS improperly assessed penalty interest. The taxpayers note that penalty interest is an affected item under §6231(a)(5)—a statement with which the IRS agrees. The taxpayers argue that, since penalty interest is not a partnership item, §7422(h)'s prohibition on actions brought for refunds attributable to partnership items does not apply. Thus, they conclude that the district court erred in holding that it lacked subject-matter jurisdiction over their claim that the IRS's assessment of penalty interest against them was improper. In response, the IRS argues that, although the taxpayers' penalty-interest claim concerns an affected item, this claim is at least in part attributable to partnership items, and hence, §7422(h) applies. *See* 26 U.S.C. §7422(h) (barring courts from hearing suits brought for refunds that are "*attributable to* partnership items" (emphasis added)).

We agree with the IRS's position. To determine whether an assessment of penalty interest is appropriate, a court first would have to determine whether tax-motivated transactions occurred, i.e., whether the partnerships engaged in transactions that lacked economic substance. In the particular case before us, a court also would have to answer the slightly different question of whether the partnerships' agreements with the IRS established that tax-motivated transactions occurred. The taxpayers do not suggest how the answers to these questions could differ among partners in a given partnership; it is difficult to imagine how they could. Thus, these determinations are more appropriately made at the partnership level, not at the partner level.

Treasury regulations are consistent with this basic logic, classifying the determination of whether a transaction lacks

economic substance as a partnership item. *See* 26 C.F.R. §301.6231(a)(3)–1(b) (listing "whether partnership activities have been engaged in with the intent to make a profit" as one of the "legal and factual determinations" that qualify as partnership items). As previously discussed, this regulation is entitled to *Chevron* deference.

Accordingly, we consider these predicate determinations concerning the occurrence or nonoccurrence of tax-motivated transactions to be partnership items. *See* 26 U.S.C. §6231(a)(3). Because these partnership-level assessments are a necessary predicate of a court's later determination of whether penalty interest is warranted (an affected item), we consider this later determination to be partially attributable to partnership items. Thus, we hold that §7422(h) deprives courts of subject-matter jurisdiction over the taxpayers' penalty-interest claims.

We are mindful of the fact that this holding places us in tension with the Second Circuit, which held in *Field v. United States* that §7422(h)'s jurisdictional bar on claims attributable to partnership items does not apply to claims for refunds of penalty interest. 328 F.3d 58, 59 (2d Cir. 2003). The recent trend among our sister circuits, however, has been to treat these claims as at least partially attributable to partnership items, and thus within the purview of §7422(h). *See, e.g., Prati*, 603 F.3d at 1309 (whether a transaction "lack[ed] economic substance … is directed to the nature of the partnership transaction and therefore is barred by §7422(h)"); *Duffie*, 600 F.3d at 383 ("Because the nature of a partnership's activities—whether they are sham transactions—is the partnership-item component of an affected item, the Duffies' refund claim is based on the determination of a partnership item."); *Keener*,

551 F.3d at 1366 ("[T]he nature of a partnership's transaction—and, specifically, whether a partnership transaction is a 'sham'—is a partnership item."); *RJT Invs. X v. Comm'r*, 491 F.3d 732, 738 (8th Cir. 2007) ("[T]he Tax Court correctly treated as a partnership item its determination that [the creation of a legal entity] is a 'sham.'"). For the reasons listed above, we side with this latter group of our sister circuits.

The taxpayers claim that this holding runs counter to courts' "historical[] recogni[tion] that §7422(h) cannot bar jurisdiction merely because the assessed *underpayment* was attributable to partnership items," and that "[f]or §7422(h) to bar jurisdiction, it is a *refund*, not an underpayment, that must be attributable to partnership items." In making this claim, however, the taxpayers ignore *Prati*. 603 F.3d at 1308. Moreover, the cases that that they cite in support of this claim do not limit §7422(h)'s domain to refunds attributable to partnership items. *See Field*, 328 F.3d 58, 59–60; *Prochorenko v. United States*, 243 F.3d 1359, 1362–63 (Fed. Cir. 2001); *Alexander v. United States*, 44 F.3d 328, 331 (5th Cir. 1995).

Finally, in urging us to reject what they perceives as an "overbroad" interpretation of 7422(h), the taxpayers point to *American Boat Co. v. United States*, 583 F.3d 471 (7th Cir. 2009).[2]

---

[2]   Although the taxpayers believe that *American Boat*'s approach "applies equally to both … [the] limitations and penalty-interest claims," for brevity we include this discussion only in addressing the penalty-interest issue. We note that the same rationale as we present here also applies to the their argument that *American Boat* supports their position concerning the limitations issue.

The taxpayers characterize *American Boat* as standing for the proposition that "courts in partnership-level suits have jurisdiction to determine only the partnership-item components; the penalty itself and its nonpartnership-item components are resolved in later partner-level proceedings." But this reading of *American Boat* contorts our holding concerning a specific defense at issue in that case into a grand statement concerning our application of §7422(h) to penalty-interest claims more generally. In *American Boat*, we considered whether raising the reasonable cause exception for underpayments, *see* 26 U.S.C. §6664(c), as a defense is properly considered a partnership- or a partner-level item, or both. 583 F.3d at 478. We determined that the reasonable-cause defense could be raised either by a partner in a partner-level proceeding or by a partnership in a partnership-level proceeding. *Id.* at 480.

The taxpayers urge us to follow a similar approach in the instant case. But they do not address any potential similarities between the classification of the limitations and penalty-interest claims in the instant case and classification of the reasonable-cause defense in *American Boat*. Instead, their argument boils down to an assertion that, since we held in *American Boat* that the reasonable-cause defense was not exclusively a partnership item, *id.* at 478–80, we therefore ought to conclude in the instant case that the limitations and penalty-interest issues are not partnership items. Without more, we do not think that this conclusion naturally flows from the premise.

## C.

The taxpayers also mount a separate challenge to the IRS's assessment of taxpayers Joseph and Joann Shanahan's tax liability for the 1986 tax year. This challenge has its origins in the following set of facts. On July 19, 2001, the Tax Court made a decision concerning the 1986 tax liability for a partnership in which the Shanahans were partners. In brief, the Tax Court found that the Shanahans had underpaid their tax liabilities from this partnership in 1986. On August 7, 2002, the IRS mailed the Shanahans a document, labeled IRS Form 4549A, which noted the size of the couple's income tax deficiency and the balance due. This document did not, however, specifically indicate that it was a notice of computational adjustment or state the length of time that the Shanahans had in which to challenge the adjustment. On September 2, 2002, the IRS made assessments against the couple based on this Tax Court decision. On August 26, 2004—slightly less than two years after the IRS made these assessments—the Shanahans filed a refund claim.

The taxpayers' complaint alleged that the IRS had improperly assessed income tax against the Shanahans for the 1986 tax year, "because the IRS applied the entire adjustment to [Joseph] Shanahan's distributive share of [a specific partnership's] loss determined by the Tax Court as if he had not limited his claimed deduction under the 'at-risk' rules." In response, the IRS argued that the Shanahans' refund claim was time-barred.

The district court agreed with the IRS, and dismissed the Shanahans' claim for want of jurisdiction. The court deter-

mined that the six-month statute of limitations for claims that the IRS "erroneously computed any computational adjustment" applied to the Shanahans' claim. *See* 26 U.S.C. §6230(c)(1)(A)(ii) ("a partner may file a claim for refund on the grounds that the Secretary erroneously computed any computational adjustment necessary" for certain actions); 26 U.S.C.§6230(c)(2)(A) (stating that any claim under, *inter alia*, subparagraph (1)(A) "shall be filed within 6 months after the day on which the Secretary mails notice of computational adjustment to the partner"). With this six-month period having expired, the court held that it lacked jurisdiction to entertain the Shanahans' claim. *See United States v. Dalm*, 494 U.S. 596, 608 (1990) (stating that, under principles of sovereign immunity, the terms of the United States' consent to be sued "define [the] court's jurisdiction," and that "[a] statute of limitations … is one of those terms" (internal quotation omitted)).

On appeal, the taxpayers argue that the general statute of limitations for refund claims, 26 U.S.C. §6511(a), ought to apply. This provision establishes a two- or three-year limitations period for most claims for credit or refunds of overpayment,[3] unless an exception applies. The six-month period for claims arising out of alleged IRS "erroneous comput[ations] [of] any computational adjustment" in certain circumstances, §6230(c), is one such exception. The taxpayers challenge the application of §6230(c)'s six-month statute of limitations on two fronts.

---

[3]   The parties agree that, if our court were to find that 26 U.S.C. §6511(a) supplies the relevant statute of limitations, then two years would be the applicable length.

First, the taxpayers argue that their complaint does not allege an erroneous computation of a computational adjustment, and that therefore the six-month statute of limitations in §6230(c)—which covers complaints alleging, *inter alia*, that the IRS "erroneously computed any computational adjustment" in certain circumstances—does not apply. Consequently, they continue, their claim is not time-barred. In making this assertion, the taxpayers claim that the phrase "erroneous[] comput[ations] [of] any computational adjustment," §6230(c), refers exclusively to "math errors." They characterize their complaint as "not based on mathematical mistakes but on substantive issues," chief among them that the IRS erroneously "include[d] in its tax computation an adjustment for a deduction it acknowledge[d] the Shanahans did not claim."

The taxpayers' argument that the phrase "erroneously computed any computational adjustment" only refers to "mathematical mistake," which are distinguishable from "substantive issues," does not find support in statutory or case law. A "computational adjustment" is defined as "the change in the tax liability of a partner which properly reflects the treatment … of a partnership item." 26 U.S.C. §6231(a)(6). Although the Code does not provide a precise definition of what constitutes an erroneous computation in this context, the fact that the provision immediately preceding §6230(c) is entitled "Mathematical and clerical errors appearing on partnership returns," §6230(b), indicates that §6230(c) refers to a class of errors that is distinct from "[m]athematical and clerical errors." Accordingly, we reject the taxpayers' assertion that "'erroneously computed' can only rationally mean 'made a math error.'" The Code's separate provisions for "math[] …

errors" and "erroneous[] comput[ations]," §6230(b) & (c), leads us to the opposite conclusion. *See Duffie*, 600 F.3d at 385–86 (holding that the six-month limitations period applies to taxpayers' claim that the IRS erroneously computed the exact same adjustment as in the instant case). We hold that the six-month statute of limitations applies.

Second, the taxpayers claim that the Form 4549A that the Shanahans received from the IRS did not provide adequate notice of the computational adjustments and that, therefore, the six-month period never began. To be considered adequate, a notice of deficiency must (i) "advise the taxpayer that the IRS determined that a deficiency exists for a particular year," and (ii) "specify the amount of the deficiency or provide the information necessary" to do so. *Murray v. Comm'r,* 24 F.3d 901, 903 (7th Cir. 1994). The Form 4545A mailed to the Shanahans lists the existence and amount of the couple's tax deficiency in two places: Line 14 ("Deficiency-Increase in Tax") and the sub-line in Line 18 ("Total Penalties") that includes the phrase "Underpayment attributable [to] Tax Motivated Transactions." The form therefore meets our standard for notice.

Accordingly, we conclude that because the Shanahans failed to file within this period, the district court correctly held that it was barred from considering their complaint.

### D.

Finally, the taxpayers claim that the district court erred in dismissing their complaint for want of jurisdiction under §7422(h) without first conducting "a full *res judicata* analysis. They call our attention to *Duffie*, in which the Fifth Circuit dismissed a similar tax refund suit. 600 F.3d 362. In that case,

the district court had determined that a prior agreed decision in the Tax Court was *res judicata*, *id.* at 373, and that the Duffies' failure to file a timely refund claim deprived the court of subject-matter jurisdiction, *id.* at 384. The Fifth Circuit adopted the lower court's opinion, verbatim, as its own opinion. *Id.* at 364. Significantly, the district court in *Duffie* first conducted a lengthy analysis of the IRS's assertion that the Duffies' claim was barred by *res judicata*, *id.* at 372–82, and then analyzed the IRS's claims that the courts lacked subject-matter jurisdiction based on §7422 and on the Duffies' failure to file their claim before the statute of limitations had run, *id.* at 382–87. The court agreed with the IRS on both issues.

The taxpayers in the instant case argue that, since the *Duffie* court's *res judicata* analysis preceded its jurisdictional analysis, a full exposition on the former subject is necessary before courts can evaluate the latter. But there is no language in *Duffie* to suggest that one analysis is in any way dependent on the other. Instead, the court's *res judicata* analysis and its jurisdictional analysis provide separate and independent bases for the court's grant of the IRS's motion for summary judgment.

Even if the taxpayers' characterization of *Duffie* were correct—and, we stress, it is not—this alleged authority from our sister court would not be persuasive in our court. Lack of subject-matter jurisdiction is an immovable impediment; if courts do not have jurisdiction to hear a case, then the outcome is a foregone conclusion, rendering superfluous any other analysis that could conceivably occur prior to the jurisdictional analysis. Therefore, the notion that, in circumstances such as these, courts must or should conduct full *res judicata* analyses before examining whether they possess the authority to hear

claims flies in the face of judicial economy considerations, not to mention common sense.[4] Given these concerns, it is little wonder that the Federal Circuit, when faced with strikingly similar cases as the matter before us today, affirmed lower-court dismissals for lack of subject-matter jurisdiction under §7422(h), without conducting "full" *res judicata* analyses. *See Prati*, 603 F.3d at 1305; *Keener*, 551 F.3d at 1362–63). Accordingly, we reject the taxpayers' claim that the district court erred in not undertaking a more detailed *res judicata* analysis.

### III.

The district court did not have subject-matter jurisdiction over the taxpayers' claims. Their claims that the IRS's assessments against them were untimely and improperly included penalty interest are barred, since these determinations are attributable to partnership items over which courts lack subject-matter jurisdiction. In addition, the fact that the Shanahans' refund claim based on alleged IRS computational errors was brought well after the period established by the relevant statute of limitations had run bars considerations of

---

[4]  This statement does not imply, however, that courts cannot make *any* inquiry into the identities of parties before them, and the status of these parties' claims, before dismissing for want of jurisdictions. Under 26 U.S.C. §6226, federal courts have jurisdiction to consider appeals filed by partners concerning partnership items that were adjudicated in IRS administrative decisions. Because §6226 provides the only mechanism by which taxpayers with certain claims can have their day in court, it seems sensible that some inquiry into whether the taxpayers were considered parties in earlier §6226 actions would be needed before the court can determine whether §7422(h) bars jurisdiction. This statement, however, is a far cry from the position voiced by the taxpayers in the instant case.

that claim. Finally, the district court was correct in determining whether it had jurisdiction before conducting a *res judicata* analysis; after the court had determined that it lacked jurisdiction, such analysis was unnecessary. Accordingly, we AFFIRM the district's court dismissal of the taxpayers' complaint.